Name of Offeree: _____

Memorandum No.: _____

---
**CONFIDENTIAL OFFERING MEMORANDUM**
---

# FINVEST YANKEE, L.P.
(a Delaware limited partnership)

Offering of Limited Partnership Interests to U.S. Persons

**GENERAL PARTNER:**

Finvest Fund Management, LLC (a Delaware limited liability company)

July 2007

# FinVest
asset management

Confidential

EDGE-E-0000253

# IMPORTANT NOTICES

PURSUANT TO RULE 4.13(a)(3) PROMULGATED BY THE U.S. COMMODITY FUTURES TRADING COMMISSION, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

FINVEST YANKEE, L.P. (THE "**FUND**") WILL INVEST IN A BROAD RANGE OF SECURITIES, WHICH INVOLVES A HIGH DEGREE OF RISK, INCLUDING THE POSSIBILITY OF A TOTAL LOSS OF INVESTMENT. PROSPECTIVE INVESTORS SHOULD CAREFULLY READ THIS OFFERING MEMORANDUM, ESPECIALLY THE SECTION ENTITLED "RISK FACTORS," IN ORDER TO EVALUATE THE RISKS INVOLVED IN LIGHT OF THEIR INVESTMENT OBJECTIVES AND FINANCIAL RESOURCES.

THE OFFERING MEMORANDUM CONSTITUTES AN OFFER TO PURCHASE LIMITED PARTNERSHIP INTERESTS IN THE FUND (THE "**INTERESTS**") ONLY IF A NAME AND NUMBER APPEAR IN THE APPROPRIATE SPACES ON THE COVER PAGE AND THEN ONLY TO THE OFFEREE SO NAMED. ANY REPRODUCTION OR DISTRIBUTION OF THIS OFFERING MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, WITHOUT THE PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER, IS PROHIBITED. ANY DISTRIBUTION OF THIS OFFERING MEMORANDUM TO ANY PERSON OTHER THAN THE OFFEREE IS UNAUTHORIZED.

THIS OFFERING MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT LAWFUL, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO.

PROSPECTIVE PURCHASERS OF INTERESTS IN THE FUND ARE NOT TO CONSTRUE THE CONTENTS OF THIS CONFIDENTIAL OFFERING MEMORANDUM AS LEGAL OR TAX ADVICE. NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE MADE OR INTENDED TO BE MADE, NOR SHOULD ANY BE INFERRED, WITH RESPECT TO THE ECONOMIC RETURN, IF ANY, OR THE TAX ATTRIBUTES OF ANY INVESTMENT IN THE FUND. NO ASSURANCE CAN BE GIVEN THAT EXISTING LAWS WILL NOT BE CHANGED OR INTERPRETED ADVERSELY. EACH INVESTOR SHOULD CONSULT HIS OWN PERSONAL COUNSEL, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX, ECONOMIC AND RELATED MATTERS CONCERNING THIS INVESTMENT AND ITS SUITABILITY FOR THAT INVESTOR.

THE INTERESTS OF THE FUND ARE NOT CURRENTLY LISTED ON ANY STOCK EXCHANGE AND THE FUND HAS NOT BEEN AUTHORIZED OR REGISTERED FOR PUBLIC OFFER BY ANY REGULATORY AUTHORITY.

EACH PROSPECTIVE INVESTOR WILL BE REQUIRED TO CERTIFY WHETHER THE INTERESTS ARE BEING ACQUIRED DIRECTLY OR INDIRECTLY FOR A U.S. PERSON OR A NON-U.S. PERSON FOR THE PURPOSE OF U.S. SECURITIES AND TAX LAWS.

THE RIGHTS AND DUTIES OF LIMITED PARTNERS HOLDING INTERESTS IN THE FUND WILL BE GOVERNED BY THE LIMITED PARTNERSHIP AGREEMENT DELIVERED TOGETHER WITH THIS OFFERING MEMORANDUM (THE "**FUND AGREEMENT**"). ALL CAPITALIZED TERMS USED IN THIS OFFERING MEMORANDUM, BUT NOT DEFINED HEREIN, SHALL HAVE THE MEANINGS GIVEN TO THEM IN THE FUND AGREEMENT.

THERE ARE RESTRICTIONS ON THE TRANSFERABILITY OF INTERESTS IN THE FUND. EACH INVESTOR MUST BE ABLE TO BEAR THE ECONOMIC RISKS OF AN INVESTMENT IN THE FUND FOR AN INDEFINITE PERIOD. INTERESTS IN THE FUND MAY NOT BE TRANSFERRED WITHOUT THE PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER WHICH MAY BE WITHHELD BY THE GENERAL PARTNER IN ITS SOLE DISCRETION. IN ADDITION, SUCH INTERESTS MAY BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF BY AN INVESTOR ONLY IF THEY ARE REGISTERED UNDER APPLICABLE FEDERAL AND STATE SECURITIES LAW OR IF SUCH REGISTRATION IS NOT REQUIRED.

THIS IS NOT A PUBLIC OFFERING. THE INTERESTS IN THE FUND OFFERED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR ANY STATE OR OTHER SECURITIES LAWS. INTERESTS IN THE FUND ARE OFFERED AND SOLD IN A PRIVATE PLACEMENT FOR INVESTMENT ONLY TO U.S. PERSONS WHO ARE ACCREDITED INVESTORS AS DEFINED IN REGULATION D UNDER THE SECURITIES ACT PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("**SEC**"), AND IN COMPLIANCE WITH ANY APPLICABLE STATE OR OTHER SECURITIES LAWS. NEITHER THE FUND NOR THE INTERESTS HAVE BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION OR ANY OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THOSE AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS OFFERING MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

EACH INVESTOR IN THE INTERESTS OFFERED HEREBY MUST ACQUIRE SUCH INTEREST SOLELY FOR SUCH INVESTOR'S OWN ACCOUNT, FOR INVESTMENT PURPOSES ONLY AND NOT WITH AN INTENTION OF DISTRIBUTION, TRANSFER OR RESALE, EITHER IN WHOLE OR IN PART.

NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM SHALL BE EMPLOYED IN THE OFFERING OF THESE INTERESTS EXCEPT FOR THIS OFFERING MEMORANDUM, THE RELATED SUBSCRIPTION DOCUMENTS AND THE FUND AGREEMENT, A COPY OF WHICH ACCOMPANIES THIS OFFERING MEMORANDUM. NO PERSON OTHER THAN THE GENERAL PARTNER HAS BEEN AUTHORIZED TO MAKE REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THESE INTERESTS, EXCEPT THE INFORMATION CONTAINED HEREIN, AND ANY INFORMATION OR REPRESENTATION NOT EXPRESSLY CONTAINED HEREIN OR OTHERWISE SUPPLIED BY THE GENERAL PARTNER IN WRITING MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE FUND OR ANY OF ITS LIMITED PARTNERS.

A PROSPECTIVE INVESTOR SHOULD NOT SUBSCRIBE FOR INTERESTS UNLESS SATISFIED THAT IT AND/OR ITS REPRESENTATIVE HAS ASKED FOR AND RECEIVED ALL INFORMATION WHICH WOULD ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THE PROPOSED INVESTMENT.

THE FUND SHALL MAKE AVAILABLE TO EACH INVESTOR OR ITS AGENT, DURING THIS OFFERING AND PRIOR TO THE SALE OF ANY INTERESTS, THE OPPORTUNITY TO ASK

QUESTIONS OF AND RECEIVE ANSWERS FROM ANY PERSON AUTHORIZED TO ACT ON BEHALF OF THE FUND CONCERNING ANY ASPECT OF THE FUND AND ITS PROPOSED BUSINESS AND TO OBTAIN ADDITIONAL INFORMATION TO THE EXTENT THE FUND POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

THE INFORMATION CONTAINED HEREIN IS ACCURATE AS OF THE DATE HEREOF LISTED ON THE COVER PAGE. NEITHER THE DELIVERY OF THIS OFFERING MEMORANDUM NOR ANY SALES MADE HEREUNDER AFTER THE DATE HEREOF SHALL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE MATTERS DISCUSSED HEREIN SINCE THE DATE HEREOF.

THIS OFFERING MEMORANDUM HAS BEEN PREPARED SOLELY ON THE BASIS OF THE RELEVANT LEGISLATION AND REGULATIONS OF THE UNITED STATES AND THEIR INTERPRETATIONS, WHICH ARE BELIEVED TO REFLECT ACCURATELY CURRENT INTERPRETATIONS BY RELEVANT AUTHORITIES AS AT THE DATE HEREOF. IT SHOULD BE APPRECIATED THAT RELEVANT LEGISLATION AND REGULATIONS, AND THEIR INTERPRETATION BY RELEVANT AUTHORITIES, MAY BE ALTERED IN THE FUTURE. THE DELIVERY OF THIS OFFERING MEMORANDUM AT ANY TIME, AND THE ALLOCATION AND ISSUE OF INTERESTS, DOES NOT IMPLY THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS AT ANY TIME SUBSEQUENT TO THE DATE HEREOF.

THE FORWARD-LOOKING INFORMATION PRESENTED IN THIS OFFERING MEMORANDUM REPRESENTS THE SUBJECTIVE VIEWS OF THE GENERAL PARTNER REGARDING FUTURE PERFORMANCE, BASED ON ASSUMPTIONS THAT MAY OR MAY NOT PROVE TO BE CORRECT. THERE CAN BE NO ASSURANCE THAT THE GENERAL PARTNER'S VIEWS ARE ACCURATE OR WILL BE REALIZED, AND NOTHING CONTAINED HERE IS, OR SHOULD BE RELIED ON AS, A PROMISE AS TO THE FUTURE PERFORMANCE OR CONDITION OF THE FUND. INDUSTRY EXPERTS MAY DISAGREE WITH THESE ASSUMPTIONS AND WITH THE GENERAL PARTNER'S STRATEGIES AND THE DESCRIPTIONS HERE OF THE FUND'S PROSPECTS.

NEITHER THE FUND NOR THE MASTER FUND (AS HEREIN DEFINED) IS REGISTERED AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "**COMPANY ACT**"), AND THE GENERAL PARTNER IS NOT REGISTERED AS AN INVESTMENT ADVISER UNDER THE U.S. INVESTMENT ADVISERS ACT OF 1940, AS AMENDED (THE "**ADVISERS ACT**").

## SPECIAL STATE DISCLOSURES

**FOR FLORIDA RESIDENTS ONLY:**

PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN FLORIDA, A FLORIDA INVESTOR MAY, AT ITS OPTION, WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE HEREUNDER WITHIN A PERIOD OF THEE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE FUND, AN AGENT OF THE FUND OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS ITS EXECUTED SUBSCRIPTION DOCUMENTS, OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

**FOR GEORGIA RESIDENTS ONLY:**

INTERESTS IN THE FUND HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE GEORGIA SECURITIES ACT OF 1973, AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

| TABLE OF CONTENTS |
|---|

SUMMARY OF TERMS ............................................................................................... 1
CERTAIN RISK FACTORS ....................................................................................... 11
FUND ........................................................................................................................... 18
GENERAL PARTNER................................................................................................ 18
CAPITAL CONTRIBUTIONS ................................................................................... 19
CAPITALIZATION .................................................................................................... 19
PARTICIPATION IN "NEW ISSUES" ...................................................................... 20
SUBSCRIPTION PROCEDURES .............................................................................. 20
CERTAIN EMPLOYEE BENEFIT PLAN CONSIDERATIONS .............................. 20
POTENTIAL CONFLICTS OF INTEREST............................................................... 22
PREVENTION OF MONEY LAUNDERING ........................................................... 22
CERTAIN PROVISIONS OF THE FUND AGREEMENT ....................................... 22
TAX CONSIDERATIONS.......................................................................................... 25
ADDITIONAL INFORMATION................................................................................ 25
PARTNERSHIP AGREEMENT................................................................................. 28

---

**SUMMARY OF TERMS**

---

THIS SUMMARY IS FOR CONVENIENCE ONLY AND IS NOT INTENDED TO BE A COMPLETE DESCRIPTION OF THE FUND. THIS SUMMARY IS QUALIFIED BY THE INFORMATION APPEARING ELSEWHERE IN THIS DOCUMENT AND BY THE FUND AGREEMENT. PROSPECTIVE INVESTORS SHOULD READ THIS OFFERING MEMORANDUM, THE FUND AGREEMENT AND THE RELEVANT SUBSCRIPTION AGREEMENT CAREFULLY BEFORE DECIDING WHETHER TO INVEST IN THE FUND.

ALL CAPITALIZED TERMS USED BUT NOT DEFINED IN THIS SUMMARY HAVE THE MEANINGS GIVEN TO THEM ELSEWHERE IN THIS DOCUMENT OR IN THE FUND AGREEMENT.

| | |
|---|---|
| **The Fund and the Master Fund** | Finvest Yankee, L.P. (the "**Fund**"), a Delaware limited partnership formed on May 29, 2007. |
| | To effect its investment objective, the Fund may invest substantially all of its assets in Finvest POPS Trading LLC, a Delaware limited liability company formed on November 1, 2006, or another entity managed by the General Partner, which shall operate as the "**Master Fund**." The discussion herein relating to the investments made by the Fund includes investments made through the Master Fund. |
| | The General Partner may organize one or more additional investment vehicles to invest in the Master Fund to accommodate legal, tax or other considerations relating to particular investors. The Fund and such other investment vehicles may also be referred to as "**Feeders**." |
| **General Partner** | Finvest Fund Management, LLC, a Delaware limited liability company, will be the General Partner of the Fund, the Master Fund and the other Feeders. |
| | The General Partner will manage the Fund's business affairs, including implementing its investment strategy, and contracting for financial, administrative, legal and auditing services on behalf of the Fund. |
| **Investment Objective** | The General Partner's investment objective is to achieve both capital preservation and appreciation while minimizing monthly performance volatility. |

| | |
|---|---|
| **Investment Strategy; Underlying Portfolio** | The Fund will apply a multi-disciplinary approach to investing, without limiting itself to a pre-defined strategy or set of strategies. It may purchase, acquire, hold, sell or otherwise dispose of, hold long or short positions in, and generally invest and trade in, on margin or otherwise, publicly traded equity securities of all kinds, bonds, debentures, equity options, commodity options (including options in physical commodities and futures contracts), other equity-linked securities and derivative instruments and other securities of whatever kind or nature of any person, government, corporation or unincorporated body, whether foreign or domestic (the "**Underlying Portfolio**"). |
| **Sub-Advisors** | The Underlying Portfolio will be primarily selected and managed by a number of different asset managers (the "**Sub-Advisors**") selected from time to time by the General Partner, each of whom will manage a separate portion of the Fund's investments. By having the Underling Portfolio selected and managed by a diverse set of Sub-Advisors, the General Partner intends to provide Limited Partners with access to the varied skills and expertise of the Sub-Advisors selected. Each Sub-Advisor will be entitled to receive quarterly performance allocations from the Master Fund on the net capital appreciation of the Managed Account he or she manages, which generally are expected to be equal to 20% of net capital appreciation, with entitlements to additional allocations for superior performance and risk management. |
| **Assets in Separate Managed Accounts** | The assets managed by each manager will be held in separate accounts (each a "**Managed Account**"). In certain circumstances, one Sub-Advisor may manage the assets in more than one Managed Account. Each Sub-Advisor will also invest, directly or indirectly, in the Managed Account which it manages. Each Managed Account will be accounted for separately within the Fund and the Master Fund, including with respect to allocations of Net Capital Appreciation and Net Capital Depreciation. |
| **Investment Methodology** | The Fund may invest in the Underlying Portfolio directly or indirectly through one or more investment vehicles. Alternatively, at the General Partner's election, the Fund may access the economic return of all or part of the Underlying Portfolio through one or more transactions utilizing derivative instruments such as total return swaps, options or leveraged note structures (a "**Derivative Transaction**"), in which case the Fund's assets may consist solely of one or more derivative instruments and cash and cash equivalents, and the Fund will not have legal ownership of the Underlying Portfolio. |
| | If the Fund enters into a Derivative Transaction, any costs |

and expenses of such Derivative Transaction shall be reimbursed by the General Partner, and the General Partner, to the extent of its assets, will indemnify the Fund and each of the Limited Partners from any losses that may be incurred as a result of any such Derivative Transaction. The General Partner will be deemed to have made a capital contribution to the Fund with respect to the amount of leverage provided by the counterparty to any such Derivative Transaction.

If the Fund enters into a Derivative Transaction, the discussion herein relating to the investments made by the Fund includes investments underlying such Derivative Transaction.

**Offering**

Through this Offering Memorandum, the Fund is offering up to $3,000,000,000 of limited partnership interests (the "**Interests**"). An initial Capital Contribution of at least $1,000,000 is required from each subscriber, although the General Partner may, in its discretion, accept a lesser amount. The General Partner may also reject any subscription in whole or in part. The offering will continue until terminated by the General Partner or until the Fund has the maximum number of beneficial owners permitted by law. New subscribers will be admitted to the Fund as Limited Partners on the first Business Day of each month or at such other times as the General Partner, in its sole discretion, may permit (each, a "**Subscription Date**"). A Business Day is defined as a day on which the New York Stock Exchange is open for trading.

**Suitability**

The Fund will invest in a broad range of securities, which involves a high degree of risk, including the possibility of a total loss of investment. Prospective investors should carefully read this Offering Memorandum, especially the section entitled "Risk Factors," in order to evaluate the risks involved in light of their investment objectives and financial resources.

Investors must be "accredited investors," as defined in the Securities Act.

**Additional Contributions**

A Limited Partner may make additional contributions only with the consent of the General Partner.

**Subscription Procedure**

To purchase an Interest, a prospective purchaser must (i) complete, execute and deliver to the Fund the subscription documents that accompany this Offering Memorandum (the "**Subscription Documents**") and (ii) pay the full amount of the subscription by a wire transfer pursuant to the instructions contained in the Subscription Documents at least five (5) business days before the applicable Subscription Date. Subscription monies received after the above cut-off, unless

|  |  |
|---|---|
|  | the untimeliness is waived by the General Partner in its sole discretion, will be held until the next Subscription Date. No interest will be paid on subscription amounts from the date of receipt until the subscription is accepted at the Subscription Date. |
|  | The Fund will continue to offer Interests on a monthly basis. All subscription monies will be deposited in a segregated holdings account maintained by the General Partner at its bank (the "**Bank**") until the applicable Subscription Date, at which time the monies will be invested in Interests if the subscription is accepted. Subscription monies will be promptly returned if a subscription is rejected. |
| **Opening Capital Accounts** | There will be established for each Partner on the books of the Fund, as of the first day of each calendar quarter (each calendar quarter is hereinafter called a "**Fiscal Period**"), an opening capital account with respect to each Managed Account (an "**Opening Capital Account**"). The Opening Capital Account of each Partner for the Fiscal Period during which such Partner was admitted to the Fund will be an amount equal to such Partner's contribution to the capital of the Fund that was allocated by the General Partner to such Managed Account. The Opening Capital Account of each Partner for each other Fiscal Period will be an amount equal to the Closing Capital Account of such Partner for the immediately preceding Fiscal Period plus the amount of any additional contribution to the capital of the Fund made by such Partner as of the beginning of such other Fiscal Period less any withdrawals made by such Partner or any distributions made to such Partner, as of the last day of the immediately preceding Fiscal Period. |
| **Partnership Percentages** | There will be established for each Partner on the books of the Fund, as of the first day of each Fiscal Period, a partnership percentage (a "**Partnership Percentage**") for such Fiscal Period with respect to each Managed Account. The Partnership Percentage of each Partner for each Fiscal Period for a particular Managed Account will be determined by dividing the amount of such Partner's Opening Capital Account for such Fiscal Period with respect to such Managed Account by the sum of the Opening Capital Accounts of all the Partners participating in such Managed Account for such Fiscal Period, which will include (i) all Limited Partners who are not Sub-Advisors and (ii) the Sub-Advisor of such Managed Account. The sum of the Partnership Percentages for each Fiscal Period with respect to each Managed Account will equal 100 percent. |
| **Closing Capital Accounts** | There will be established for each Partner on the books of the Fund, as of the last day of each Fiscal Period, a closing capital account with respect to each Managed Account (a |

|  |  |
|---|---|
|  | "**Closing Capital Account**") for such Fiscal Period determined by adjusting the Opening Capital Account of such Partner for such Fiscal Period in the following manner and order (and then further adjusting such Opening Capital Account first for the performance allocations to the Sub-Advisors pursuant to the governing documents of the Master Fund, if applicable, and second for the Performance Allocation to the General Partner described below under "Performance Allocation," if applicable): |
|  | There will be determined with respect to each Managed Account as of the close of business on the last day of such Fiscal Period an amount (the "**Aggregate Capital Amount**") equal to the excess of: |
|  | (i)    the value of the assets in such Managed Account, including (but not limited to) securities, cash, receivables, prepaid expenses and deferred charges and fixed assets (with the value of any Fund assets not in or otherwise allocated by the General Partner to any particular Managed Account allocated pro rata to such Managed Account based on the value of such Account (without taking into account such other assets) out of the value of all other Managed Accounts (without taking into account such other assets)) over |
|  | (ii)   the amount of all proper liabilities of the Fund allocated to such Managed Account, including (but not limited to) notes and accounts payable, accrued expenses and deferred income. |
| **Allocable Loss** | If the Aggregate Capital Amount with respect to a Managed Account is less than the aggregate amount of the Opening Capital Accounts of all Limited Partners participating in such Managed Account (the difference between the Aggregate Capital Amount and the aggregate amount of the Opening Capital Accounts being, in such circumstance, a "**Net Capital Depreciation**"), such Net Capital Depreciation will be allocated to the Partners in the following order of priority: |
|  | (i)    first, to the Limited Partners participating in such Managed Account (including the Sub-Advisor of such Managed Account) in proportion to their respective Partnership Percentages with respect to such Managed Account, unless and until the balance of the Opening Capital Account of the Sub-Advisor of such Managed Account is equal to or less than the amount of such Sub-Advisor's Adjusted Capital Contribution (as defined below); |
|  | (ii)   second, to the Sub-Advisor of such Managed Account until the balance in its Opening Capital Account is zero; |

|  |  |
|---|---|
|  | (iii)   third, to the Limited Partners participating in such Managed Account other than the Sub-Advisor of such Managed Account in proportion to their respective Partnership Percentages with respect to such Managed Account, until the balances in their respective Opening Capital Accounts are zero; and |
|  | (iv)   thereafter, to the General Partner. (The total amount allocated to any Partner pursuant to clauses (i) through (iv) is referred to herein as such Partner's **"Allocable Loss"** for such period.) |
|  | The term **"Adjusted Capital Contribution"** means, with respect to a Sub-Advisor and a particular Fiscal Period, the greater of (i) his total cash capital contributions to the Fund as of the beginning of such Fiscal Period and (ii) the balance of his Opening Capital Account at the beginning of the first Fiscal Period of the fiscal year in which such Fiscal Period occurs. |
| **Allocable Profit** | If the Aggregate Capital Amount with respect to a Managed Account is greater than the aggregate amount of the Opening Capital Accounts of all Limited Partners participating in such Managed Account (the difference between the Aggregate Capital Amount and the aggregate amount of the Opening Capital Accounts being, in such circumstance, a **"Net Capital Appreciation"**), such amount will be allocated to the Partners in the following order of priority: |
|  | (i)   first, to the Sub-Advisor of such Managed Account in an amount equal to (A) the total amount of any Allocable Loss previously allocated to such Sub-Advisor pursuant to clause (ii) under "Allocable Loss" above for all previous Fiscal Periods minus (B) the total amount of Allocable Profit previously allocated to such Sub-Advisor pursuant to this clause (i) for all previous Fiscal Periods; and |
|  | (ii)   thereafter to the Sub-Advisor of such Managed Account and to the other Limited Partners participating in such Managed Account in proportion to their respective Partnership Percentages with respect to such Managed Account. (The total amount allocated to any Partner pursuant to clauses (i) and (ii) is referred to herein as such Partner's **"Allocable Profit"** for such period.) |
| **Performance Allocations to the General Partner** | With respect to each Limited Partner other than the General Partner, the Sub-Advisors, and their respective Affiliates, for each Performance Period after such Limited Partner was admitted to the Fund, an amount equal to the Performance Allocation with respect to such Limited Partner for such period will be debited against the capital account of such Limited Partner and the amount so debited will |

simultaneously be credited to the capital account of the General Partner.

The term "**Performance Period**" means, with respect to a Limited Partner, the period commencing on the first day of each calendar quarter (or, if later, the date on which such Limited Partner became a member of the Fund) and ending on the last day of such calendar quarter. If, prior to the end of a calendar quarter, such Limited Partner withdraws all or part of his interest in the Fund, the Fund admits as a substituted Limited Partner a person to whom the entire Partnership interest of such Limited Partner in the Fund has been transferred, or the final distribution to such Limited Partner is made following the dissolution of the Fund, then the last Performance Period with respect to such amount withdrawn or such Limited Partner, as the case may be, will be the period commencing on the same date as the preceding Performance Period and ending on the date of such event.

With respect to each Limited Partner the term "**Performance Allocation**" for a Performance Period means an amount equal to ten percent (10%) of the amount, determined as of the close of each Performance Period, by which (i) such Limited Partner's Positive Performance Change for such Performance Period, if any, exceeds (ii) any positive balance in such Limited Partner's Loss Carry-forward Account as of the beginning of such Performance Period. A Limited Partner who is a Sub-Advisor will be exempt from being charged a "Performance Allocation" as defined in this paragraph.

As used herein, the term "**Performance Change**" for a Performance Period with respect to a Limited Partner means the amount, if any, by which (i) the Closing Capital Accounts of such Limited Partner for all Managed Accounts as of the last day of such Performance Period (before giving effect to any Performance Allocation for such Period but after giving effect to the performance allocations to the Sub-Advisors pursuant to the governing documents of the Master Fund, if applicable), exceeds (ii) the Opening Capital Accounts of such Limited Partner for all Managed Accounts as of the first day of such Performance Period (after giving effect to any Performance Allocation for the preceding Performance Period). If the amount specified in clause (i) exceeds the amount specified in clause (ii) for a Performance Period, such difference will be a "**Positive Performance Change**," and if the amount specified in clause (ii) exceeds the amount specified in clause (i), such difference will be "**Negative Performance Change**."

For purposes of calculating the Performance Allocation, "**Loss Carry-forward Account**" of a Limited Partner means

a memorandum account to be recorded in the books and records of the Fund with respect to such Limited Partner, which shall have an initial balance of zero and which will be adjusted as follows:

(i) As of the first day after the close of each Performance Period for such Limited Partner, the balance of the Loss Carry-forward Account will be increased by the amount, if any, of such Limited Partner's Negative Performance Change for such Performance Period and will be reduced (but not below zero) by the amount, if any, of such Limited Partner's Positive Performance Change for such Performance Period.

(ii) As of the first day following any date as of which the capital account balance of any Limited Partner is reduced as a result of any withdrawal or distribution of capital, any positive balance of the Loss Carry-forward Account will be reduced (but not below zero) by an amount determined by multiplying (a) such positive balance by (b) a fraction, of which the numerator is equal to the amount of such withdrawal or distribution, and the denominator is equal to the balance of such Limited Partner's capital account immediately before giving effect to such withdrawal or distribution.

No transferee of any Limited Partner's interest in the Fund (other than a successor to a Limited Partner's interest as a result of an involuntary transfer by operation of law) will succeed to any Loss Carry-forward Account balance or portion thereof attributable to the transferor except with the express prior consent of the General Partner.

**Management Fee**   The General Partner or an Affiliate of the General Partner shall be responsible for providing the Fund and the Master Fund with office space and related equipment, appropriate secretarial and clerical services and such other administrative services as shall be necessary or desirable in connection with the conduct of the Fund's activities. As compensation for such administrative services, each Limited Partner (other than a Limited Partner who also is a Sub-Advisor) shall pay to the General Partner each quarter in arrears a management fee ("**Management Fee**") of 0.25% (1.00% annually) of the Limited Partner's Closing Capital Account as of the last day of such calendar quarter prior to any adjustment of such Closing Capital Account with respect to the Performance Allocation. In the event that the Fund commences or terminates its business, or that a Limited Partner withdraws all or a portion of his or her entire capital account balance, on a day other than the last day of a calendar quarter, the Limited Partners or Partner, respectively, shall be charged

|  |  |
|---|---|
|  | only the pro rata portion of the quarterly management fee representing the proportion of such calendar quarter during which the Fund was conducting its business or the Limited Partner's withdrawn capital was invested in the Fund. The Management Fee shall be paid by deduction from each Limited Partner's capital account, unless other payment arrangements are made with the General Partner, and may be waived with respect to any Limited Partner at the discretion of the General Partner. |
| **Distributions** | The General Partner shall have the right, in its sole and absolute discretion, to make distributions to the Limited Partners, as of the last day of any calendar quarter, of amounts credited to the capital accounts of the Limited Partners in cash or in kind. |
| **Ongoing Costs/Expenses** | In addition to the Management Fee paid to the General Partner, the Fund will bear the costs associated with its ongoing operations. These include legal, accounting, administrative, transaction, auditing costs as well as any extraordinary expenses that may arise. |
| **Organizational Expenses** | The General Partner will bear all the costs associated with the organization of the Fund. |
| **Withdrawals** | A Limited Partner may withdraw subject to certain conditions. All withdrawals require a 30-day notice and will be effective as of the close of business on the last day of the calendar quarter (the "**Withdrawal Date**"). Generally, the Fund will pay withdrawal proceeds within 30 days after the Withdrawal Date, although 5% of the proceeds of any withdrawal that represents more than 95% of a Limited Partner's Capital Account may be withheld until 15 days following the receipt by the Fund of its year-end audited financial statements for the year in which the withdrawal occurred. |
|  | If withdrawal requests for any one Withdrawal Date exceed 10% of the Net Asset Value of the Fund on that date, the General Partner may scale back pro-rata the amount of withdrawals permitted on the Withdrawal Date so that not more than 10% of the Net Asset Value of the Fund is withdrawn. |
|  | In certain cases, the General Partner may, in its sole discretion, delay the payments of a withdrawal in certain cases if the General Partner deems the delay necessary to avoid adverse effects to the Fund from the untimely liquidation of its investments. The General Partner may also delay in whole or in part the payment of withdrawal proceeds under special circumstances, including the default or delay in payments due the Fund from brokers, banks, underlying funds, underlying investments, or other persons. The General |

|  |  |
|---|---|
|  | Partner in its sole discretion will make payment as soon as reasonably practicable. |
|  | The General Partner may compel the withdrawal of part or all of any Limited Partner's Interest upon at least 20 days' prior written notice. |
| **Transferability** | The Interests are not transferable without prior written consent of the General Partner. There is no public market (primary or secondary) for the sale or transfer of Interests and it is not anticipated that any such market will develop in the future. |
| **Tax Status of the Fund** | For U.S. federal income tax purposes, the Fund will be classified as a partnership and not as an association taxable as a corporation. Consequently, each U.S. Limited Partner will be required to report on its federal income tax return its allocable share of the income, gains, losses, deductions and credits of the Fund, whether or not any actual distribution is made to such Limited Partner during the taxable year. |
| **ERISA and other Tax Exempt Entities** | Investment in the Fund by entities subject to the Employee Retirement Income Security Act of 1974 ("**ERISA**") and other tax-exempt entities requires special consideration. If the Fund should borrow in order to leverage its investment, tax-exempt Limited Partners may realize "debt financed income" and thus may incur an income tax liability with respect to "unrelated business taxable income" as a consequence of investing in the Fund. Trustees or administrators of tax exempt entities should consult their own legal tax advisers regarding such issues. |
|  | The General Partner will not accept any subscription that would result in individual retirement accounts, Keogh Plans or employee benefit plans subject to Title I of ERISA in the aggregate holding 25% or more of the interests in the Fund. |
| **Exemptions from Registration** | The sale of Interests will not be registered with the SEC in reliance upon an exemption from the registration requirements of the Securities Act provided under Section 4(2) thereof. |
|  | The Fund will not register as an investment company under the Company Act by reason of the provisions of Section 3(c)(1) thereof. |
| **Reporting** | As soon as reasonably practicable after the end of each fiscal year of the Fund, the General Partner will cause to be prepared and furnished to each Limited Partner an annual report containing: |
|  | (i)   audited financial statements for such fiscal year; |
|  | (ii)  a tax statement showing the items of income, deduction, gain, losses or credit allocated to such Partner |

pursuant to the provisions of the Code, in sufficient detail to enable such Partner to prepare its individual income tax returns in accordance with the laws, rules and regulations then prevailing thereunder; and

(iii)   a statement showing the change to such Partner's capital account with respect to such fiscal year.

As soon as reasonably practicable after the end of each fiscal quarter of the Fund, the General Partner shall furnish to each Limited Partner an unaudited summary of such Partner's Closing Capital Account for such quarter.